# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DANYALL LORENZO SIMPSON,**

    Petitioner,

  v.                                         Case No. 15-cv-925

**JUDY P. SMITH,**

    Respondent.

## DECISION AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS

In 2012, a jury in Milwaukee County Circuit Court convicted Danyall Lorenzo Simpson of recklessly endangering safety, aggravated battery, domestic abuse, and failure to comply with officer's attempt to take a person into custody. Mr. Simpson challenged his conviction, arguing that he was deprived of his right to a speedy trial and that he received ineffective assistance of counsel. The Circuit Court denied his claim without a hearing, the Wisconsin Court of Appeals affirmed, and the Wisconsin Supreme Court denied review. Mr. Simpson is currently serving ten years of initial confinement and five years of extended supervision at the Redgranite Correctional Institution.

In 2018, Mr. Simpson filed an amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254,[1] alleging that his custody is unconstitutional because he was deprived of his right to a speedy trial and received ineffective assistance of counsel. The Respondent opposes the petition, arguing that Mr. Simpson has failed to meet his burden of proving that the Wisconsin Court of Appeals' decision is contrary to, or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence presented. For the following reasons, the Court will deny Mr. Simpson's petition.

I. **Background**

In 2012, a jury found Danyall Lorenzo Simpson guilty of endangering safety by use of a dangerous weapon, aggravated battery by use of a dangerous weapon, domestic abuse, and failing to comply with an officer's attempt to take a person into custody by a jury sitting in Milwaukee County Circuit Court. *See* Petition for Writ of Habeas Corpus 2. Mr. Simpson was sentenced to ten years of initial confinement and five years of extended supervision. Pet. 2. He is currently incarcerated at Oshkosh Correctional Institution. Pet. 2.

In May 2013, Mr. Simpson filed a direct appeal of conviction claiming that the trial court erred in ruling that he waived his right to a speedy trial based on having illicit phone contact with the victim in the case. Pet. 3. The Wisconsin Court of Appeals affirmed Mr. Simpson's conviction, finding that the length of delay

---

[1] In 2015, the Court granted Mr. Simpson's motion to stay petition and hold it in abeyance while he exhausted his state court remedies. *See* ECF No. 15.

between Mr. Simpson's indictment and the start of his trial was not presumptively prejudicial. *See* Court of Appeals Decision 5-6. The Wisconsin Supreme Court denied Mr. Simpson's petition for review in September 2014. Pet. 4.

Mr. Simpson also sought post-conviction relief in the Wisconsin state courts, alleging that his trial counsel and post-conviction counsel provided constitutionally ineffective assistance. Pet. 4. The Milwaukee County Circuit Court denied his post-conviction motion, the Wisconsin Court of Appeals affirmed, and the Wisconsin Supreme Court denied his petition for review. *Id*. at 4-7. In October 2015, the Wisconsin Court of Appeals denied Mr. Simpson's state petition for a writ of habeas corpus. Pet. 7.

On July 25, 2018, Mr. Simpson filed an amended federal habeas corpus petition pursuant to 28 U.S.C. § 2254, asserting four grounds for relief: (1) the trial court violated his right to a speedy trial; (2) trial counsel was constitutionally ineffective when he failed to move for dismissal of an improper penalty enhancer; (3) trial counsel was constitutionally ineffective when he failed to object to improper closing arguments; and (4) appellate counsel was ineffective for failing to file a reply brief refuting the State's arguments. Pet. 8-11. Mr. Simpson was allowed to proceed on all four claims. *See* Amended Order on Rule 4 Review, ECF No. 28. The Petition is now fully briefed and ready for disposition. *See* Brief in Support of Petitioner's Habeas Corpus Petition, ECF No. 37; Brief Opposing Petition for Writ of Habeas Corpus, ECF No. 48; and Reply Brief in Support of Petitioner's Habeas Corpus Petition, ECF No. 50.

## II. Standard of Review

Federal habeas corpus review is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214. Under AEDPA, a prisoner in custody pursuant to a state-court judgment of conviction is entitled to federal habeas relief only if he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). With respect to claims adjudicated on the merits in state court, a federal court can grant an application for a writ of habeas corpus "only if the state court's decision was contrary to clearly established Supreme Court precedent, involved an unreasonable application of such precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in state court." *Promotor v. Pollard*, 628 F.3d 878, 888 (7th Cir. 2010) (citing 28 U.S.C. § 2254(d)); *see also White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

"A legal principle is 'clearly established' within the meaning of [§ 2254(d)(1)] only when it is embodied in a holding of [the Supreme Court]." *Thaler v. Haynes*, 559 U.S. 43, 47 (2010) (citing *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A state-court decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13 (opinion of O'Connor, J.).

4

Similarly, a state-court decision results in an "unreasonable application" of clearly established federal law when that court either "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. A writ of habeas corpus may not issue under the "unreasonable application" clause "simply because the federal court concludes that the state court erred. Rather, the applicant must demonstrate that the state court applied the Supreme Court's precedent in an objectively unreasonable manner." *Kubsch v. Neal*, 838 F.3d 845, 859 (7th Cir. 2016) (citing *Woodford v. Visciotti*, 537 U.S. 19, 24–25 (2002)). Thus, the petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Kubsch*, 838 F.3d at 859 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). For purposes of federal habeas review, state-court factual determinations are entitled to "substantial deference." *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015). To obtain relief under § 2254(d)(2), a petitioner must demonstrate that the state-court decision "rests upon fact-finding that ignores the clear and convincing weight of the evidence." *McManus v. Neal*, 779

F.3d 634, 649 (7th Cir. 2015) (quoting *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010)); *see also* 28 U.S.C. § 2254(e)(1). "The decision must be 'so inadequately supported by the record as to be arbitrary and therefore objectively unreasonable.'" *Alston v. Smith*, 840 F.3d 363, 370 (7th Cir. 2016) (quoting *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003)).

When applying the above standards, federal courts look to "the 'last reasoned state-court decision' to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (quoting *Johnson v. Williams*, 568 U.S. 289, 297 n.1 (2013)).

### III. Discussion

Mr. Simpson maintains that he is entitled to habeas relief because (1) he was denied his right to a speedy trial; and (2) his trial, postconviction, and appellate counsel rendered ineffective assistance, in violation of the U.S. Constitution. The Respondent argues that Mr. Simpson has failed to meet his burden of proving that the Wisconsin Court of Appeals' decision denying his writ of habeas corpus is contrary to, or an unreasonable application of, clearly established federal law.

#### A. Speedy Trial

Mr. Simpson first argues that his habeas petition should be granted pursuant to § 2254 because he was deprived of his right to a speedy trial under the Sixth Amendment. Mr. Simpson contends that because he did not knowingly, intelligently, and voluntarily waive his right to a speedy trial, the trial court's

6

determination was erroneous and the Court of Appeals' decision affirming such was an unreasonable application of federal law. Pet'r's Br. 4-12.

The Sixth Amendment guarantees a defendant the right to a speedy trial. *See* U.S. Const. amend. VI. In *Barker v. Wingo*, the Supreme Court established the framework for evaluating a constitutional speedy trial challenge. 407 U.S. 514 (1972). The Court identified four factors to assess whether a defendant was denied his right to a speedy trial: the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Id*. at 530. None of the four factors are "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id*. at 533.

To evaluate Mr. Simpson's deprivation of a speedy trial claim, the Court of Appeals applied the balancing test provided by *Barker*. *See* Ct. App. Decision 5. Mr. Simpson contends that "the appellate court did not apply the *Barker* court inquiry appropriately as to the trial court's deprivation of Simpson's right to a speedy trial" because "the appellate court did not focus on well-established precedent set by the United States Supreme Court, which is 'fundamental constitutional rights must be waived knowingly, intelligently, and voluntarily.'" *See* Pl.'s Br. 11 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). Yet, *Zerbst* involved a defendant's waiver of the assistance of counsel not a speedy trial claim. *See* 304 U.S. at 462. Thus, the balancing test established in *Barker* is the appropriate mechanism by which to

7

asses whether a defendant has been deprived of his right to a speedy trial. *See* 407 U.S. at 530.

Following the *Barker* Court's lead, the Wisconsin Court of Appeals began its analysis of Mr. Simpson's speedy trial claim by discussing the length of delay. Ct. App. Decision 5, ECF No. 16-4. "The length of delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. The Supreme court has identified a delay that approaches one year to be 'presumptively prejudicial'. *See State v. Borhegyi*, 222 Wis. 2d 506, 510 (Ct. App. 1998) (citing *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)).

Here, the Court of Appeals noted that the time between the filing of the complaint against Mr. Simpson and his trial was six months and ten days. Ct. App. Decision 5. Because the delay did not approach twelve months and because Mr. Simpson developed no argument as to why the delay should be considered presumptively prejudicial, the Court of Appeals determined that Mr. Simpson was not deprived of his speedy trial right. *See* Ct. App. Decision 5-6; *see also Barker*, 407 U.S. at 531 (noting that there is no need for inquiry into the other factors if the length of delay is not presumptively prejudicial). The Court of Appeals decision is not contrary to, or an unreasonable application of federal law. Thus, Mr. Simpson is not entitled to relief on this claim.

**B. Ineffective Assistance of Counsel**

Mr. Simpson next argues that he is entitled to relief under § 2254 because his trial, postconviction, and appellate counsel rendered ineffective assistance of counsel in violation of his rights guaranteed by the Sixth Amendment. Specifically, he argues that his counsel was ineffective for failing to file a reply brief, for failing to move for dismissal of an improper penalty enhancer, and for failing to object to the prosecution's improper closing arguments.

Criminal defendants have a constitutional right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To succeed on an ineffective assistance of counsel claim, a habeas petitioner must demonstrate (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Id*. at 687. A petitioner satisfies the first prong if he demonstrates that his "counsel's representation fell below an objective standard of reasonableness." *Id*. at 687–88. To satisfy the second prong, a petitioner must demonstrate a "reasonable probability" that absent counsel's errors, "the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "[C]ourts need not address both prongs of *Strickland*" if the petitioner makes an inadequate showing as to one. *See Atkins v. Zenk*, 667 F.3d 939, 946 (7th Cir. 2012) (citing *Strickland*, 466 U.S. at 697).

"Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. On habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland*

standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Thus, when a *Strickland* claim is evaluated under § 2254(d)(1), the standard of review is said to be "doubly deferential." *See Mirzayance*, 556 U.S. at 123 (citing *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003) (per curiam)).

In analyzing all three of Mr. Simpson's ineffective assistance of counsel claims, the Wisconsin Court of Appeals applied the well-established standards set forth in *Strickland*. *See* Ct. App. Decision 2. Thus, its decision was not contrary to federal law. The remaining question for each claim then is whether the court reasonably applied *Strickland* to the facts. For the following reasons, Mr. Simpson is not entitled to relief on any of his ineffective assistance of counsel claims.

### a. Whether trial counsel provided ineffective assistance by failing to file a reply brief

Mr. Simpson first claims that his appellate counsel provided constitutionally ineffective assistance when he failed to file a reply brief during appellate litigation on direct appeal. Pl.'s Br. 13. On direct appeal, Mr. Simpson argued that the trial court erred in ruling that he waived his right to a speedy trial. *Id*. After applying relevant federal law, the Court of Appeals denied Mr. Simpson's claim, concluding that the length of delay was not presumptively prejudicial. *See* Ct. App. Decision 5-6, ECF No 16-4. The Court of Appeals also stated that because Mr. Simpson did not file a reply brief addressing the State's position that the Court's inquiry of a speedy trial claim ends if the length of delay is not presumptively prejudicial, that

10

argument was conceded. *Id.* at 6. Mr. Simpson contends that by not filing a reply brief his appellate counsel's performance was deficient because "[u]ltimatley, the Appellate Court was left with no option other than to agree with the State that the length of delay was not presumptively prejudicial." Pl.'s Br. 14.

The Court of Appeals began its analysis of Mr. Simpson's claim with the prejudice prong of the *Strickland* test and concluded that Mr. Simpson showed no prejudice from the alleged deficiency. *See* Court of Appeals Decision 3, ECF No. 36-2:3. In making his argument to the Court of Appeals, Mr. Simpson contended that "had a reply brief been filed, the court of appeals would have received a reply argument that 193 days was presumptively prejudicial considering that Simpson filed a statutory speedy trial demand which was violated and the second trial was not scheduled until 98 days after the first trial." *Id.* The Court of Appeals determined that because Mr. Simpson's brief-in-chief repeatedly emphasized that the court should address his speedy trial claim in light of his demand for a speedy trial, a reply brief asserting the same argument would have had no effect on the outcome of the appeal. *See Id*; *see also Strickland*, 466 U.S. at 694 (1984) (discussing the prejudice prong: a petitioner must demonstrate a "reasonable probability" that absent counsel's errors, "the result of the proceeding would have been different). As the Court of Appeals' determination was objectively reasonable, Mr. Simpson is not entitled to relief on this claim.

### b. Whether trial counsel was ineffective for failing to move for dismissal of an improper penalty enhancer

Mr. Simpson next argues that his trial counsel provided ineffective assistance of counsel when he failed to seek pretrial dismissal of a penalty enhancer alleged in Count 4, which was ultimately dismissed post-trial. *See* Def.'s Br. 12. *See* Pl.'s Br. 17-20. The State alleged in Count 4 that Mr. Simpson failed to comply with an officer's attempt to take him into custody, in violation of Wis. Stat. § 946.415 (2). The charge includes as an essential element that the accused "remains or becomes armed with a dangerous weapon or threatens to use a dangerous weapon regardless of whether he or she has a dangerous weapon." Wisconsin Statute § 946.415 (2)(c). The State further alleged that Mr. Simpson committed this crime while possessing a dangerous weapon and that he therefore faced an enhanced penalty pursuant to Wis. Stat. § 939.63 (1). *See* Wis. Stat. § 939.63 (1) (stating that if a person commits a crime while possessing a dangerous weapon, the maximum term of imprisonment prescribed by law for that crime may be increased).

While the jury found Mr. Simpson guilty of violating both statutes, the penalty enhancer was later dismissed for being statutorily inapplicable as § 939.63(1) "does not apply if possessing, using, or threatening to use a dangerous weapon is an essential element of the crime charged." *See* Wis. Stat. § 939.63(2); *see also* Court of Appeals Decision 8, ECF No. 21-5. Mr. Simpson contends that if his trial counsel had moved to dismiss the illegal enhancer pretrial, he could have accepted a plea bargain with the State. *See* Pl.'s Br. 16-20.

The Court of Appeals again began its analysis with Strickland's prejudice prong. It explained that Mr. Simpson must demonstrate a reasonable probability

that he would have accepted a plea bargain that did not include the penalty enhancer. *See* Ct. App Decision 9, ECF No. 21-5. If Mr. Simpson would have rejected a plea bargain that did not include the enhancer, he was not prejudiced. *Id.* (citing *State v. Winters*, 2009 WI App 48 ¶ 36 (Mar. 10, 2009) (holding that to establish the prejudice prong, Winters would have to aver that there was a reasonable probability that he would have accepted the plea offered to him). The Court of Appeals determined that there was no question that Mr. Simpson would have rejected a plea without the enhancer in Count 4 because "[h]e rejected one offer that included dismissing and reading in the entirety of Count 4; he rejected another offer that included pleading guilty to Count 4 without the penalty enhancer; and he rejected a third offer that included outright dismissal of Count 4." Ct. App Decision 9, ECF No. 21-5. The Court's review of the record showed that the offers were unacceptable to Mr. Simpson because they exposed him to more years of imprisonment than he was willing to accept, even excluding the enhancer. *Id.*; *see also* Pl.'s Br. 15. Thus, the Court of Appeals concluded that Mr. Simpson did not demonstrate a reasonable likelihood that he would have resolved his case with a plea bargain if his trial counsel had moved to dismiss the enhancer before trial. *Id.*

Mr. Simpson asserts that he desired to take a plea deal but that he refused to take a deal in which he was overcharged. *See* Pl.'s Br. 16-17. The Court of Appeals emphasized, however, that Mr. Simpson had multiple chances to resolve this case on terms that included dismissing the penalty enhancer in Count 4, but he declined each opportunity. Ct. App. Decision 9, ECF No. 21-5. Because the record fails to

13

establish that Mr. Simpson would have taken a plea deal absent the penalty enhancer attached to Count 4, this Court cannot say that the Court of Appeals' determination in this regard is objectively unreasonable. Accordingly, Mr. Simpson is not entitled to habeas relief on this claim.

### c. Whether trial counsel was ineffective for not objecting to the prosecutor's closing argument

Finally, Mr. Simpson argues that his trial counsel was ineffective for failing to object to a portion of the State's rebuttal closing argument and that his postconviction counsel was subsequently ineffective for failing to make that argument on appeal. *See* Def.'s Br. 15. Challenges to a closing argument are considered in the context of the whole trial. *See* Ct. App. Decision 12, ECF No. 21-5 (citing *State v. Mayo*, 2007 WI 78, ¶ 43 (June 26, 2007)). The relevant portions of the trial as summarized by the Court of Appeals are as follows:

> Daniel testified on direct examination that on October 2, 2011, she was in her first-floor apartment when she heard Simpson and Billie Morgan [Simpson's mother] arguing in the upper flat. Daniel subsequently heard screaming, the chaotic sounds of moving furniture, and a third person crying. Eventually, Daniel heard something that sounded like a group of people running down the stairs, and then she saw Morgan's car driving away from the home. Soon thereafter, she received a text message from Morgan that said, "call 9-1-1." On cross-examination, Daniel acknowledged that one or more people who ran down the stairs might have accompanied Morgan when she drove away from the home.
>
> Officer Martinez Moore testified that he was one of the officers who responded to Daniel's 9-1-1 call. He told the jury that Morgan arrived at the duplex while he and other officers were at the scene, and he described the statements she made to police as they were trying to persuade Simpson to come out of the bedroom. Specifically, Morgan told officers that Simpson had a physical alteration with B.C., that the blood at the scene came from a head

14

> wound B.C. had sustained, and that Simpson was possibly armed with a long gun.
>
> A second officer, Howard Joplin, described speaking to Morgan after the incident ended. When Joplin described Morgan's statement that she had "cleaned up" some items in her home, the circuit court sustained Simpson's hearsay objection and directed the jury that the statement was not evidence and should not be considered.

Ct. App. Decision 12-13, ECF No. 21-5.

Emphasizing Daniel's testimony about hearing "something that sounded like a group of people running down the stairs," Mr. Simpson suggested to the jury during closing arguments that a third-party perpetrator might have injured B.C. In rebuttal, the State made the following argument that Mr. Simpson now contends was improper:

> What's interesting is you heard a number of statements that were attributed to Billie Morgan. If it was someone else [who battered B.C.], why didn't Billie Morgan, the defendant's own mother, point that person out? Because there was nobody else. You know what Billie Morgan did instead? She started cleaning. That's how she got the blood on her pants. That was her effort to save her son.

Ct. App. Decision 13, ECF No. 21-5. Mr. Simpson contends that because the circuit court sustained his hearsay objection regarding Ms. Morgan's statements about cleaning up and because there was no evidence to substantiate the State's argument relating to blood on Ms. Morgan's pants, the prosecutor's closing statements to the jury were improper. Moreover, Mr. Simpson argues, had his attorney objected the prosecutor's improper arguments, "the court would had instructed the jurors on the

impropriety of those statements, therefore, leading to a reasonable probability of a different result." Pl.'s Br. 23.

The Court of Appeals determined that Mr. Simpson showed no prejudice from his attorney's alleged errors because it is assumed that a jury follows limiting and cautioning instructions. *See* Ct. App. Decision 14, ECF No. 21-5. Here, the jury was specifically instructed not to consider the stricken hearsay testimony regarding Ms. Morgan's cleaning. *See* Trial Transcript, ECF No. 16-19:95. Instructions such as these are presumed to erase any possible prejudice "unless the record supports the conclusion that the jury disregarded the [circuit] court's admonition." Ct. App. Decision 15, ECF No. 21-5 (citing *State v. Sigarroa*, 2004 WI App 16, ¶ 24 (Dec. 10, 2003)). The Court of Appeals determined that nothing in the record supported such a conclusion, thus, Mr. Simpson was not prejudiced by the State's comment on Ms. Morgan's cleaning.

As for the blood on Ms. Morgan's pants that the State alluded to in its rebuttal, the Court of Appeals stated that "a prosecutor may comment on the evidence and argue from it to a conclusion." *See* Ct. App. Decision 15-16, ECF No. 21-5 (citing *State v. Hurley*, 2015 WI 35, ¶ 95 (Mar. 31, 2015)). Here, a witness testified that Ms. Morgan had blood on her pants, and nothing prevented the State from giving a closing argument based on trial testimony. Again, Mr. Simpson was not prejudiced by the State's comment.

Because Mr. Simpson's trial counsel was not ineffective for failing to object to the prosecutor's closing arguments, it necessarily follows that Mr. Simpson's

16

postconviction counsel was not constitutionally ineffective for failing to make that argument. Thus, the Court of Appeals determination of such was not objectively unreasonable.

IV. **Evidentiary Hearing**

Pursuant to Rule 8 of the Rules Governing Section 2254 cases, Mr. Simpson requests this Court to hold an evidentiary hearing on his speedy trial claim and his claims on ineffective assistance of trial, postconviction, and appellate counsel. *See* Motion for Evidentiary Hearing, ECF No. 49. If his motion for an evidentiary hearing is granted, Mr. Simpson also asks this Court to appoint him counsel to represent him at said hearing. *Id.*

Only if the petitioner has failed to develop the factual basis of a claim in State Court proceedings may the court consider holding an evidentiary hearing on a claim presented in the habeas petition. *See* 28 U.S.C. § 2254(e)(2). Mr. Simpson insists that an evidentiary hearing is necessary because certain facts are still undeveloped: whether he would have plead guilty if his attorney had moved for dismissal of the improper penalty enhancer; the reason his attorney failed to object to the prosecutor's improper closing arguments; whether he waived his right to a speedy trial knowingly, intelligently, and voluntarily; and the reason his counsel failed to file a reply brief during appellate litigation. *See* Mot. for Evidentiary Hearing 7-10.

The majority of the facts that Mr. Simpson claim are undeveloped have been previous argued and rejected in State court proceedings. *See supra* pp.6-17. As for

the lack insight into Mr. Simpson's counsel's reasoning for failing to object to improper arguments and failing to file a reply brief, Mr. Simpson was not prejudiced by these alleged deficiencies. Moreover, he has not put forth any evidence that the outcome of the trial would have been any different but for counsel's alleged errors. *See supra* pp. 10-17; *see also* Mot. for Evidentiary Hearing 7-10.

Accordingly, the Court does not find that an evidentiary hearing on Mr. Simpson's claims is warranted nor is appointment of counsel.

## V. Conclusion

For the reasons abovementioned, this Court finds no basis upon which it may properly find that Mr. Simpson is entitled to habeas relief based upon the claims asserted in his Petition.

## VI. Certificate of Appealability

There is one final matter to address. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the [habeas] applicant." *See* Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts. A district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Court finds that Mr. Simpson is not entitled to a certificate of appealability. Mr. Simpson has not demonstrated "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that

18

jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Of course, Mr. Simpson has a right to seek a certificate of appealability from the court of appeals. *See* Fed. R. App. P. 22(b).

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Danyall Lorenzo Simpson's Amended Petition for Writ of Habeas Corpus, ECF No. 21, is **DENIED**.

**IT IS FURTHER ORDERED** that Mr. Simpson's Motion to Clarify, ECF No. 42 is **DENIED** as **MOOT**.

**IT IS FURTHER ORDERED** that Mr. Simpson's Motion for Evidentiary hearing and Motion to Appoint Counsel, ECF No. 49 is **DENIED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 23rd day of September, 2019.

**BY THE COURT:**

*s/ David E. Jones*
DAVID E. JONES
United States Magistrate Judge